IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMBIER S. WILLIAMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 8:21-CV-02135-PX |
| v. | * | |
| | * | |
| JOHN P. ROTH, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the motion to dismiss for lack of subject matter jurisdiction or in the alternative, for summary judgment (ECF No. 26), filed by Defendant John P. Roth, Secretary of the United States Air Force (the "Secretary"),[1] and the cross motion for summary judgment filed by Plaintiff Ambier Williams (ECF No. 30). The motions are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, Williams' motion for summary judgment is granted, and the case is remanded to the Air Force Board for Correction of Military Records.

## I.    Background

This case arises out of Plaintiff Ambier Williams' involuntary discharge from the United States Air Force on March 14, 2011, after she was diagnosed with Personality Disorder and determined unfit for active-duty service. Following eight years of protracted administrative entanglement, Williams now asks this Court to set aside the final decision issued by the Air Force Board for Correction of Military Records (the "AFBCMR" or the "Board"). *See* ECF No.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Defendant requests that the current Secretary of the Air Force, Frank Kendall III, be substituted in the place of John P. Roth. ECF No. 26-1 at 3 n.1. This request is GRANTED.

1.  The matter requires first explaining the Air Force's process for responding to servicemembers who suffer from physical or mental disabilities that affect their ability to serve, and next the labyrinthine course that Williams navigated in her attempts to seek relief from the Board.

### A.  Servicemember Separation Procedures Due to Psychological Disability

The Secretary of the Air Force retains authority to retire or separate any Air Force member rendered unfit because of a physical or mental disability.  *See* 10 U.S.C. §§ 1201, 1216; *see also* ECF No. 30-3 (excerpts from Air Force Instruction ("AFI") 36-3208); Department of the Air Force Manual ("DAFMAN"), 48-123 (explaining procedures for implementing 10 U.S.C. § 1216), *available at* https://static.e-publishing.af.mil/production/1/af_sg/publication/dafman48-123/dafman48-123.pdf.  Relevant here, a servicemember who develops a physical disability while on active duty is placed into the Disability Evaluation System ("DES").  *See* AFI 36–3212, *Physical Evaluation For Retention, Retirement, and Separation*, § 1.1 (July 15, 2019), *available at* https://static.e-publishing.af.mil/production/1/af_a1/publication/afi36-3212/afi36-3212.pdf.

The DES, in turn, "determines if the service member is fit to be returned to duty or unfit for continued military service" through a multistep process.  *Id.*  First, a Medical Evaluation Board ("MEB") reviews the individual's claimed disability and medical records to determine the nature of the claimed limitation.  *Id.* § 2.3.  If the MEB determines that the disability is permanent, the case is referred to a Physical Evaluation Board ("PEB") to make a formal fitness and disability determination.  *Id.* §§ 3.1 & 3.11.  If the PEB finds that the servicemember is permanently disabled, it will assign the servicemember a disability rating, which, if greater than 30%, makes the servicemember eligible for disability retirement.  *Id.* § 3.17.2.  If the disability rating is less than 30%, the servicemember is eligible to receive a lump sum disability severance

payment. *Id.* § 3.17.4; *see Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010) (explaining 10 U.S.C. §§ 1201, 1203).

The DES is only available to servicemembers who are diagnosed with an "unfitting" medical condition. DAFMAN, 48-123 § 1.3.6. A servicemember diagnosed with an "unsuiting" medical condition faces different consequences. An "unsuiting" condition is one that the servicemember's commander "has determined interferes with assignment or duty performance, but which does not make them eligible for disability processing." AFI 36-3211, *Conditions that Interfere with Military Service* § 7.11 (June 24, 2022), *available at* https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-3211/dafi36-3211.pdf. A servicemember with an unsuiting condition will not be placed in DES or be considered for retirement benefits and may face discharge proceedings. *Id.*

If a discharged servicemember is unhappy with the designation of discharge, she may apply to correct her military records through military correction boards. *See generally* 10 U.S.C. § 1552. The AFBCMR reviews applications to correct Air Force servicemember records. The Board "consists of civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force." 32 C.F.R. § 865.1. In making its decision, the AFBCMR relies on "the evidence of the record," which includes any evidence the servicemember submits as well as commissioned advisory opinions. *Id.* §§ 865.2, 865.4(a)(1). If the servicemember does not agree with the AFBCMR, she may seek reconsideration based on "newly discovered relevant evidence that was not reasonably available when the application was previously considered." 32 C.F.R. § 865.6(a). An AFBCMR decision constitutes a final agency action. *See* 32 C.F.R. § 865.4(l); *Chappell v. Wallace*, 462 U.S. 296, 303 (1983).

### B.  Williams' Military Service and Discharge

Williams began her career with the Air Force on January 15, 2008, serving a total of 38 months until her involuntary discharge on March 14, 2011.  ECF No. 27-3 at 162–64.  For the first two years, she received overall positive performance ratings and had been described by her Command as a "[c]ommunity pillar" and "example to emulate."  ECF No. 27-1 at 103–06, 135–40.  She also received the Air Force Good Conduct, National Defense Service, and Global War on Terrorism Service medals.  ECF No. 27-3 at 162.

By her third year of service, Williams' career began to suffer.  In October 2010, her late arrival at a meeting prompted a letter of counseling which warned Williams that her "career was in jeopardy."  ECF Nos. 26-5 at 5; 26-4.  Williams' Command also referred her to the Family Advocacy Office after she had been injured in a fight with her husband, requiring a trip to the emergency room.  ECF No. 27-1 at 171.  The Family Advocacy Office, in turn, recommended implementing a crisis prevention plan to protect Williams from future incidents of domestic violence.  ECF No. 27-1 at 98, 100; 141–57.

The next month, Williams returned to the Family Advocacy Office after her husband had attacked her.  ECF No. 27-1 at 159.  Then, on November 10, 2010, Williams failed to report to her assigned post because, according to a family member, she had been admitted to the local hospital.  ECF Nos. 26-5 at 5; 27-1 at 58.  Evidently, Williams' Command did not believe this reason for her absence, and so Williams was "counseled about integrity" and formally reprimanded.  ECF No. 26-3 at 5.

Although Williams and her husband participated in counseling with the Family Advocacy Office, *see* ECF No. 27-1 at 171–86, the Command required Williams to submit to a mental health evaluation to determine whether she was "unfit or unsuitable for continued military

service" and on account of her "repeated history of violent interactions with her husband." ECF No. 26-3 at 3. Between November 16 and December 10, 2010, Williams completed a battery of testing and six interviews conducted at the on-base mental health clinic. ECF Nos. 27-2 at 6–24; 26-3 at 3.

The resulting report concluded that Williams suffered from "Personality Disorder, Not Otherwise Specified, with marked Narcissistic and Histrionic traits" that impaired "multiple areas of [her] functioning." ECF No. 27-1 at 199–200. Because Williams' "ability to function in the military environment [was] significantly impaired," the evaluators recommended that she be discharged from service. *Id.* at 200. The evaluators further designated her Personality Disorder as an "unsuiting" condition, meaning that she would not be referred to DES. ECF No. 27-1 at 200. The Air Force thus discharged Williams with the stated reason as "Personality Disorder." ECF No. 27-1 at 35. She formally separated from the military as of March 14, 2011. *Id.*

After her discharge, Williams continued receiving mental health treatment, and on May 2, 2011, was diagnosed with Bipolar Disorder I. ECF No. 27-2 at 26–36. She began formal therapy with a team of mental health providers, including a psychiatrist who proscribed medication alongside treatment. ECF No. 27-2 at 48. She responded favorably to both. *E.g., id.* at 55–56, 63.

### C. AFBCMR Applications

After Williams received the diagnosis of Bipolar Disorder I, she readied herself to apply to the AFBCMR to change her military records. Specifically, she secured two evaluations from independent psychologists who each concluded that at the time of her discharge, she suffered from Bipolar Disorder I, Posttraumatic Stress Disorder ("PTSD") and Anxious Distress, all triggered by her violent home life. ECF No. 27-2 at 81. Based on this and other evidence,

Williams filed her first application to the AFBCMR on March 7, 2012, requesting that her discharge reflect a separation for medical disability due to Bipolar Disorder, PTSD, and Anxiety Disorder.  ECF No. 27-1 at 11.  On January 10, 2013, the AFBCMR denied the application.  *See* ECF No. 27-1 at 108–12.

On May 13, 2014, Williams applied for reconsideration of the denial, and requested that the Board void her discharge, reinstate her to active duty, and refer her to DES.  ECF No. 27-1 at 113–24.  In seeking this relief, Williams argued that if the Air Force had properly diagnosed her with Bipolar Disorder, it would have been required to treat and stabilize her condition or refer her to the DES for potential disability retirement.  *Id.* at 123.  Alternatively, she requested that at a minimum, the AFBCMR change her stated reason for discharge from "Personality Disorder" to "Secretarial Authority."  *Id.* at 116.

The AFBCMR secured an advisory opinion from a clinical psychology consultant.  ECF No. 27-2 at 145–154.  The advisory opinion recommended changing the stated reason for discharge to avoid the potential stigma associated with Personality Disorder, but also recommended against referring her to the DES.  ECF No. 27-2 at 145.  Williams, in turn, submitted her treating psychologist's evaluation.  ECF No. 27-2 at 156–72.  The psychologist explained to the Board that Williams' "sudden onset and change in her behavior that occurred after the domestic violence incident," supports a diagnosis of Bipolar Disorder, not Personality Disorder.  ECF No. 27-2 at 172.  Williams also submitted records from the Department of Veterans Affairs reflecting that it was her "history of PTSD and Bipolar Disorder" that rendered her unable "to function in any occupation."  ECF No. 27-2 at 184, 185–200.

The AFBCMR next procured two more advisory opinions—one from Air Force behavioral health specialists, and another from the Department of the Air Force Personnel

Center.  ECF No. 27-3 at 38–40.  The first recommended against changing the stated reason for discharge because of "insufficient evidence" to support the diagnosis of Bipolar Disorder in 2011.  *Id.* at 39.  The second opinion similarly recommended denying Williams' requests because her separation arose from a "condition which was an impairment to continued military service."  *Id.* at 40.  Nonetheless, both opinions suggested changing the narrative reason for separation from "Personality Disorder" to "Secretarial Authority."  *Id.* at 38–40.  On August 24, 2018, the AFBCMR denied Williams' requests for relief.  *Id.* at 76–80.

### D.  The Final AFBCMR Decision

On October 9, 2018, Williams again asked the Board to reconsider its decision. Specifically, Williams argued that the Board should void her discharge and involuntary separation, reinstate her to active duty, and refer her to the DES for processing.  ECF No. 27-3 at 59–67.  As grounds, Williams submitted "newly discovered, highly material evidence," namely, the Board of Veterans Appeals' decision affirming her service award on the grounds that her Bipolar Disorder diagnosis was service related.  ECF No. 27-3 at 59.  Williams also requested that the AFBCMR specifically address a previous contention she had raised regarding the Air Force's failure to adhere to its own regulations concerning the provision of counseling and rehabilitation before resorting to discharge.  *Id.*  Finally, Williams argued that the Board opinion applied an erroneous "snapshot in time" standard pertinent to the request to correct the stated discharge reason.  *Id.* at 65–67.

On February 23, 2019, the AFBCMR again obtained another advisory opinion from a psychiatric consultant who concluded that the evidence did not support changing Williams' reasons for discharge.  ECF No. 27-3 at 81–83.  The consultant also urged the Board to reject Williams' "implicit desire for a medical retirement[.]"  *Id.* at 82.  Williams responded to the

advisory opinion on April 4, 2019, reiterating largely the same arguments as to the erroneous diagnosis, and underscored that the consultant had ignored evidence from 2011 reflecting that her Bipolar Disorder was service connected as memorialized in the Board of Veterans Appeals' decision.  ECF No. 27-3 at 87–92.

On July 21, 2019, the AFBCMR issued the final decision at the heart of this case ("final decision").  Although the final decision recommended to change the stated reason for discharge from "Personality Disorder" to "Secretarial Authority," it denied all other requested relief.  ECF No. 27-3 at 43–47.  Notably, the final decision summarily disposed of, or failed to address altogether, Williams' other arguments.  The decision simply concluded that the Air Force generally "complied" with "directives in effect at the time of discharge, and the standard of review was proper."  *Id.* at 47.  Thus, the Board found "no basis to recommend granting those portions of the applicant's request."  *Id.*

On December 14, 2020, Williams filed suit in this Court, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. ("APA"), maintaining that the final decision must be set aside as arbitrary and capricious, unsupported by substantial evidence, and contrary to law.  As relief, she asks that the Court remand the matter to the AFBCMR with direction to consider her stated arguments for relief and the new evidence submitted.  ECF No. 1 at 13.  The Secretary has moved to dismiss the action for want of subject matter jurisdiction, and both parties have cross moved for summary judgment on the APA claim.  *See* ECF Nos. 26 & 30.  Because subject matter jurisdiction implicates the power of the Court to hear the case at all, *see Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005), the Court starts there.

II.    **Subject Matter Jurisdiction**

At the pleading stage, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  If the Court cannot discern a jurisdictional basis from the face of the Complaint, dismissal is indeed warranted.  *Davis*, 367 F. Supp. 2d at 799 (citation omitted).  But where the Complaint makes plausible the basis for this Court's jurisdiction, the case shall remain before this Court.  *See id.*

The Secretary singularly contends that because the Complaint essentially seeks "monetary relief," this Court lacks subject matter jurisdiction under the APA, and that instead the matter belongs in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1).  ECF No. 26-1 at 15–19.  Williams responds that because she pleads injunctive relief only, her suit is properly before this Court.  ECF No. 30-1 at 13–19.  The Court agrees with Williams.

Review of military board decisions customarily proceeds under either the APA or the Tucker Act, all depending on the nature of the relief sought.  *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996).  Under the APA, the Court retains jurisdiction only over claims that seek "relief other than money damages" and "for which there is no other adequate remedy in a court."  5 U.S.C §§ 702, 704.  Claims for money, by contrast, proceed under the Tucker Act and in the Court of Federal Claims.  *See* 28 U.S.C. §§ 1346(a)(2), 1491; *see also Randall*, 95 F.3d at 346–47.

Where a claim "has an adequate remedy by suit under the Tucker Act," then APA review is not available in the district court.  *Randall*, 95 F.3d at 346.  Nonetheless, a "strong presumption" exists in favor of "judicial review of agency action," such that review "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."

*Bowen v. Mich. Acad. of Family Phy.*, 476 U.S. 667, 670 (1986) (citation omitted).  Accordingly, review of a Board decision is proper under the APA claim if the relief sought is nonmonetary and no adequate remedy exists in another court.  *Randall*, 95 F.3d at 346; *Hoffler v. Hagel*, 122 F. Supp. 3d 438, 442 (E.D.N.C. 2015), *aff'd in part, dismissed in part sub nom. Hoffler v. Mattis*, 677 F. App'x 119 (4th Cir. 2017); *see also James v. Caldera*, 159 F.3d 573, 578–79 (Fed. Cir. 1998).

Whether the "essence of [the] complaint" seeks equitable relief or monetary damages is determinative.  *Randall*, 95 F.3d at 347; *see also Coleman v. Wilson*, No. 17-cv-96-RJC-DSC, 2022 WL 966857, at *4 (W.D. N.C. Mar. 30, 2022).  Courts must read the Complaint with an eye toward "the true nature of the action" to ascertain whether it is, in fact, seeking money damages or some other relief.  *See James*, 159 F.3d at 579 (citation omitted).

Here, the Complaint plainly is one seeking injunctive, not monetary, relief.  Williams asks only that the Court set aside the final decision as arbitrary and capricious, and accordingly "[r]emand the matter to the AFBCMR" for further consideration of her arguments and new evidence.  ECF No. 1 at 13; *see also* ECF No. 30-1 at 14 ("To be clear, the relief [Plaintiff] seeks is purely equitable in nature: Plaintiff asks the Court to find that the AFBCMR's decision was arbitrary and capricious in violation of the APA, set it aside, and remand the case to the AFBCMR for further agency consideration.").  In this critical respect, Williams seeks the heartland of equitable relief available under the APA, not money damages.  *See Roetenberg v. Sec'y of the Air Force*, 73 F. Supp. 2d 631, 635 (E.D. Va. 1999) (APA jurisdiction proper when "plaintiff's claim is for judicial review of an adverse agency decision, and she prays for injunctive relief, namely the reversal of the AFBCMR's decision."); *Houseal v. McHugh*, 962 F. Supp. 2d 286, 293 (D.D.C. 2013) (noting the distinction between "seeking a money judgment

from the United States and seeking an equitable declaration of rights that may, or may not, lead to the payment of money"); *Esch v. Yeutter*, 876 F.2d 976, 984 (D.C. Cir. 1989) (finding district court had jurisdiction over action when plaintiffs asked for "a redetermination, in a fair and impartial hearing, of their status under the subsidy statutes . . . not money damages in compensation for the legal injury they allegedly have suffered.").

In response, the Secretary anemically attempts to recast Williams' claim as one for "retirement pay." *See* ECF No. 26-1 at 16–18. The Secretary's reasoning is that if Williams convinces the AFBCMR on remand to change the stated ground for discharge, then she "*could be entitled to military retirement and full benefits.*" ECF No. 26-1 at 18 (emphasis added). But the mere possibility that such relief *may* be available down the line does not transform this Complaint into one for money damages.[2] Indeed, "[a] suit which does not seek monetary damages does not arise under the Tucker Act simply because the plaintiff's success will result in eventual monetary gain from the government." *Powe v. Sec'y of Navy*, 35 F.3d 556 (4th Cir. 1994) (unpublished); *see also Moss v. United States*, No. 06-cv-51-D(3), 2006 WL 5547749 (E.D.N.C. Nov. 1, 2006), *report and recommendation adopted*, 549 F. Supp. 2d 721 (E.D.N.C. 2007) (finding plaintiff's complaint was primarily seeking equitable relief when he sought reversal of decision by the Board of Correction of Naval Records "regardless of the fact that Plaintiff may benefit financially if his claim is successful"), *aff'd*, 257 F. App'x 633 (4th Cir. 2007). If this Court were to conclude otherwise, then any request for review of an agency

---

[2] Nor is it a given that military retirement and benefits qualify as monetary relief such that APA jurisdiction would be precluded. *See Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) (noting that "the phrase 'retirement benefits' connotes a host of benefits to which no monetary value can be attached"); *Nieves v. McHugh*, 111 F. Supp. 3d 667, 674–675 (E.D.N.C. 2015) (request for retirement status is request for equitable relief under the APA).

decision would be thwarted if, in the future, a new agency determination could possibly lead to monetary relief.  This potentiality is simply too speculative to credit.

As for whether Williams can seek this kind of relief in any other forum, the Court sees none.  *See Randall*, 95 F.3d at 347.  Although the Secretary presses that Williams can obtain relief in the Court of Federal Claims under the Tucker Act, this argument is circular.  ECF No. 26-1 at 20–21.  Williams can only press her case in the Court of Claims if she requests monetary relief in the first place, which she does not.  So clearly, her requested remedy cannot be obtained in the Court of Federal Claims.  *Randall*, 95 F.3d at 346–47 (citing 28 U.S.C. § 1491(a)(2)); *see also Coleman*, 2022 WL 966857, *4 ("Since Plaintiff seeks equitable relief and the Court of Federal Claims has limited authority to provide equitable relief . . . the Court of Federal Claims does not provide an adequate remedy."); *Roetenberg*, 73 F. Supp. 2d at 636 ("As plaintiff is not seeking monetary relief, the Court of Federal Claims would be powerless to award her the relief she seeks here.").  Thus, because Williams has demonstrated that she seeks injunctive relief only available under the APA, jurisdiction is proper.

The Court next turns to the merits of the APA claim.

### III.   Summary Judgment

The parties cross move for summary judgment as to whether the final decision must be set aside under the APA.  Motions for summary judgment on APA claims focus on the administrative record in existence, not any record made before the reviewing court.  *See Columbus v. Cochran*, 523 F. Supp. 3d 731, 742 (D. Md. 2021); *Deese v. Esper*, 483 F. Supp. 3d 290, 304 (D. Md. 2020).  From this review, the Court must determine whether the plaintiff has demonstrated that the agency action should be set aside as arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  *See* 5 U.S.C. § 706(2)(A).

The parties do not dispute that the Board's final decision is subject to such review under the APA, or that it may be set aside as arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018).  Importantly, the standard of review is "a narrow one[,]" *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989), and it must "presume[] the validity of the agency's action." *Nat. Res. & Def. Council, Inc., v. Envtl. Prot. Agency*, 16 F.3d 1395, 1400 (4th Cir. 1993)(citation omitted).  This Court is not permitted to reweigh evidence, make credibility determinations, or substitute its judgment for that of the agency.  *See Downey v. U.S. Dep't of the Army*, 685 F. App'x 184, 189 (4th Cir. 2017).  Rather, the Court must remain "unusually deferential" to the Board's decision.  *Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 686 (E.D. Va. 2015) (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)), *aff'd* 685 F. App'x 184 (4th Cir. 2017)).

Williams maintains that the final decision was arbitrarily and capriciously made because the Board: (1) failed to address her argument that the Air Force violated its own regulations by not attempting rehabilitative services before discharge; (2) failed to consider the new evidence that demonstrates she had been suffering from Bipolar Disorder in 2011, triggered by violence at home; and (3) applied an erroneous legal standard, the "snapshot in time," when evaluating her request to change her discharge records.  ECF No. 30-1 at 34–38.  The Secretary generally maintains that the final decision was well substantiated.[3]  ECF No. 26-1 at 26–30.

---

[3] The Secretary also argues that portions of Williams' Complaint are untimely to the extent that she "seeks to challenge the Agency's decision not to retain her on active duty."  ECF No. 26-1 at 22.  However, Williams makes clear that she does not seek this Court's review of her discharge.  ECF No. 30-1 at 24.

Even with a healthy appreciation for the deference due the Board's decision, the Court must conclude the final decision was arbitrarily and capriciously made.  First, the final decision does not address whether agency regulations require Williams to have been given some rehabilitative services before it could discharge her involuntarily.  Rather, the final decision notes, in conclusory fashion, that the "discharge complied with the Air Force directive in effect at the time of [her] discharge."  ECF No. 26-8 at 5.  But without some explanation to reflect that the Board actually considered and rejected Williams' particular argument, the Court cannot conclude that the Board in fact provided meaningful review of Williams' claims.

The Secretary, in response, invites the Court to address the merits of the argument in the first instance.  It presses that the regulation related to rehabilitative services is discretionary and inapplicable to Williams.  ECF Nos 26-1 at 24–26; 33 at 10–12.  This argument, however, misses the point.  The Board, not this Court, must assess the merits of Williams' arguments.  *See Roe v. Department of Defense*, 947 F.3d 207, 220–21 (4th Cir. 2020) (quoting *Dow AgroSciences, LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467–68 (4th Cir. 2013) (stating that "post-hoc rationalizations . . . have 'traditionally been found to be an inadequate basis for review.'").  The final decision provides no basis for this Court to conclude the Board ever addressed this argument.  Accordingly, because the Board did not consider Williams' argument, the decision must be set aside.  *See Thompson v. United States*, 119 F. Supp. 3d 462, 468 (E.D. Va. 2015) (quoting *Roberts v. Harvey*, 441 F. Supp. 2d 111, 118–19) (D.D.C. 2006)) (noting that a plaintiff "can establish that the Board's decision-making process was flawed and in violation of the APA by showing that the Board did not consider or respond to an argument that does not appear 'frivolous' on its face and 'could affect the Board's ultimate disposition.'").

14

Second and similarly, nothing in the final decision suggests that the Board considered Williams' new evidence regarding her Bipolar Disorder while in service. Williams particularly urged reconsideration based on a new Veterans Appeals Board determination that, if credited, could support that Williams had developed Bipolar Disorder, not Personality Disorder, during her time of service. The final decision does not grapple with this evidence at all, and instead pays general lip service to "the interests of justice" being served by changing the stated discharge reason to Secretarial Authority. *See* ECF No. 26-8 at 5. With nothing more than these boilerplate conclusions, the Court is compelled to find that the final decision must be set aside.

The Secretary responds that the AFBCMR relied on four advisory opinions and considered all evidence that Williams had submitted, as reflected in the factual summary. ECF No. 33 at 8–12. Although the Board certainly summarized the evidence, it utterly failed to integrate any facts into its conclusory determination. Nor did it explain at all how any facts supported its final decision. Without any semblance of an explanation, the Court cannot conclude the agency decision was rationally made. *See Roe*, 947 F.3d at 220 (quoting *Sierra Club*, 899 F.3d at 293) (an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'").

As to the third ground for relief—the "snapshot in time" argument—it appears to be a variation on the theme that the final decision "made no effort to address, describe, or weigh the evidence of record in its reasoning" when it concluded that certain advisory opinions employed the "snapshot in time" standard erroneously. ECF No. 30-1 at 31. The Secretary contends that "snapshot in time" is more of a "shorthand" to describe the differences between disability in the military and the Veterans Affairs as opposed to a "standard." ECF No. 33 at 6. But this

argument is of no help.  The final decision does not explain what it means by this phrase.  *See* ECF No. 26-8 (referencing the advisory opinion's use of the term "snapshot in time" with no further explanation).  Because the Board failed to explain its decision in all respects, including the reference to the "snapshot in time" standard, the final decision must be set aside as arbitrary and capriciously made.

## IV.     Conclusion

In sum, the final decision did not appear to consider the record evidence or Williams' arguments in favor of her requested relief.  The decision, in short, is inscrutable and unsupported, and so must be set aside as an arbitrary and capricious final agency action.  The matter is remanded to the AFBCMR for further proceedings consistent with this opinion.  In any future final decision, the Board must articulate the factual and legal bases for its decision and its reasoning, expressly addressing each of Williams' arguments for her requested relief.  The Court takes no position on the merits of Williams' arguments.

A separate order follows.


September 12, 2022                                                      /S/
Date                                                         Paula Xinis
                                                             United States District Judge